1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   YANIRA GONZALEZ,                              Case No.  21-cv-01844-JCS

8                   Plaintiff,

9          v.                                     **ORDER REGARDING MOTION TO DISMISS**

10  APTTUS CORPORATION,                           Re: Dkt. No. 63

11                  Defendant.

12  **I.      INTRODUCTION**

13          Plaintiff Yanira Gonzalez, pro se, brought this action against her former employer

14  Defendant Apttus Corporation ("Apttus") asserting discrimination based on age, sex, and

15  disability, although her operative first amended complaint pursues only a theory of sex

16  discrimination.[1]  Apttus moves to dismiss Gonzalez's claim under Title VII of the Civil Rights Act

17  of 1964, arguing that she waited too long to file a charge of discrimination with the Equal

18  Employment Opportunity Commission ("EEOC").

19          The Court finds the matter suitable for resolution without oral argument and VACATES

20  the hearing previously set for August 19, 2022 at 9:30 AM.  The case management conference

21  previously set for the same time is CONTINUED to 2:00 PM the same day, to occur via Zoom

22  webinar.  For the reasons discussed below, Apttus's motion is GRANTED, and Gonzalez's Title

23

24  ───────────────────────

[1] Gonzalez's opposition brief references the age and disability discrimination theories that do not
25  appear in the operative amended complaint.  Opposition to Motion to Dismiss ("Opp'n.") (dkt. 65)
    at 2.  Given that the amended complaint supersedes the original complaint, those theories are no
26  longer part of the case.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *see also* Order re
    Mot. for Judgment on the Pleadings (dkt. 57) at 7 ("The amended complaint cannot incorporate
27  the original complaint by reference; it must include all relevant factual allegations and legal claims
    on which Gonzalez intends to rely.").  In any event, other theories of discrimination under Title
28  VII, even if properly asserted, would be barred for the same reason as Gonzalez's Title VII sex
    discrimination claim.

United States District Court
Northern District of California

1   VII claim is DISMISSED with prejudice.  Gonzalez may proceed on her claim under the Equal

2   Pay Act, which is not at issue in the present motion.[2]

3   **II.      BACKGROUND**

4           Gonzalez alleges that she was employed by Apttus beginning in 2007 and held the title of

5   Engagement Manager.  First Amended Complaint ("Am. Compl.") (dkt. 61) ¶¶ 6–7.  She alleges

6   that her last day of employment with Apttus was December 31, 2009 or 2019,[3] and that she

7   resided in New York during all times relevant to the case.  *Id.* ¶¶ 3, 19.

8           Gonzalez asserts that Apttus discriminated against her based on her sex by paying her less

9   than her male colleagues in violation of the Equal Pay Act and Title VII of the Civil Rights Act of

10  1964.  *Id.* ¶ 1.  She brings two claims, both of which are captioned as violations of the Equal Pay

11  Act.  *Id.* ¶¶ 29–34.  The substance of her second claim, however, states that Apttus paid Gonzalez

12  less than male coworkers on account of her gender in violation of Title VII, *id.* ¶ 33, and the Court

13  understands the reference to the Equal Pay Act in the caption of that claim to be an inadvertent

14  error.  The present motion concerns only the Title VII claim; Apttus does not seek dismissal of

15  Gonzalez's Equal Pay Act claim.  *See* Reply (dkt. 68) at 2 ("Apttus . . . has not moved to dismiss

16  this claim.").

17          Gonzalez describes specific incidents in her allegations of discrimination.  Gonzalez

18  alleges that in 2008, she applied for a Director role, and Peter Rubino, "a decision maker for the

19  hiring of the role," said that "Gonzalez should 'look around' and see if [she] fit the profile" of

20  anyone in the Director role.  *Id.* ¶ 10.  Gonzalez explains that she was the only female and

21  Hispanic individual at the time the Director role was opened.  *Id.*  Gonzalez alleges that her direct

22  manager supported her application but told her it was up to Rubino to make the hiring decision.

23  *Id.* ¶ 11.  Gonzalez also alleges that Rubino had received reports of another male partner engaging

---

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

[3] In Gonzalez's first amended complaint, she states that her last day of employment with Apttus was in 2009, but she previously asserted in a charge to the EEOC that her employment ended in 2019.  Am. Compl. ¶ 19; Administrative Charge (dkt. 1-4).  A document attached to her opposition brief suggests that all events at issue occurred from 2017 through 2019, *see* dkt. 65-1, rather than 2007 through 2009 as stated in her amended complaint, but the outcome of the present motion is the same regardless of which dates are correct.

United States District Court
Northern District of California

in disparaging treatment and remarks, and that Rubino had directed Gonzalez to deal with it because she knew how to treat women.  *Id.* ¶ 10.

Gonzalez asserts that in 2008, Rubino hired a male, external applicant named Troy Walker for the Director role, that Gonzalez mentored and onboarded Walker for about two months, and that Walker "performed substantially equal work with skill, effort, and responsibility under similar conditions as Gonzalez."  *Id.* ¶¶ 12–13.  Gonzalez alleges that from mid-2008 to mid-2009, Apttus "paid Walker more in salary, incentives, bonus and shares than it paid Gonzalez."  *Id.* ¶ 16. Gonzalez says that shortly after, in 2009, Walker left Apttus and his projects were transitioned back to her.  *Id.* ¶ 14.  Gonzalez alleges that in 2009, another male Director's projects were transferred to her upon that Director's promotion.  *Id.* ¶ 15.

Gonzalez alleges that in September 2009, she met with Chris Bishop, "VP of Global Services," and presented business improvement ideas.  *Id.* ¶ 18.  She alleges that after this meeting, she applied for another Director role and never received a response.  *Id.*

Gonzalez alleges that from 2007 to 2009, Apttus "paid all other male Engagement Managers more in salary, incentives, bonus and shares than it paid" her.  *Id.* ¶ 8.  She names each of the male Engagement Managers at Apttus and alleges that they all performed their duties "under similar working conditions" and that their work required "substantially similar skill, effort, and responsibility."  *Id.* ¶¶ 20–21.  She alleges that the difference in pay between her pay and that of the male Engagement Managers was not based on seniority, merit or quantity or quality of production, but rather "was because Gonzalez is female, and the other Engagement Managers were male."  *Id.* ¶¶ 22–25.  Gonzalez alleges that in 2008 and 2019, she brought the pay differential to Apttus management's attention, "but nothing was done to rectify the situation."  *Id.* ¶ 28.

Gonzalez filed a charge with the EEOC, which is also captioned as addressed to the California Department of Fair Employment and Housing ("DFEH"), on December 8, 2020 setting forth the same facts and asserting the same theories of discrimination and retaliation as in her complaint here.  Dkt. 1-4.  The EEOC issued a right-to-sue letter on December 14, 2020 notifying Gonzalez that she if she wished to pursue Title VII or Age Discrimination in Employment Act

3

("ADEA") claims in court, she must do so within ninety days of receipt of that letter.  Dkt. 1-3.
Gonzalez states in her complaint that she received the letter on January 1, 2021.  Original
Complaint (dkt. 1) at 6.  Gonzalez filed her complaint on February 10, 2021 in the Southern
District of New York, asserting claims under Title VII, the ADEA, the New York State Human
Rights Law, and the New York City Human Rights Law.  *Id.* at 3–4.  The Southern District of
New York transferred the case to this district sua sponte based on its determination that the
conduct at issue occurred while Gonzalez was employed in California and the case lacked a
sufficient connection to New York to establish that state as an appropriate venue.  *See* dkt. 4.

After Apttus was served, it filed an answer (dkt. 31) on September 13, 2021.  Apttus filed a
motion for judgment on the pleadings on January 28, 2022, contending that Gonzalez's federal
claims should be dismissed for failure to exhaust administrative remedies within 300 days of the
conduct at issue because she waited until 361 days after she was fired to file her administrative
charge, and arguing that Gonzalez's New York claims must be dismissed because she alleged that
she was employed in California and did not allege any connection to New York.  *See* Mot. (dkt.
49) at 5–7.  On March 3, 2022, this Court granted Apttus's motion and dismissed Gonzalez's
claims without prejudice, allowing Gonzalez to file an amended complaint to cure the defects in
her original complaint and state any other viable claims related to her employment at Apttus.
Order re Motion for Judgment on the Pleadings ("Order") (dkt. 57).

Gonzalez filed her first amended complaint on June 10, 2022, and Apttus filed its answer
on June 24, 2022.  *See generally* Am. Compl.; Answer to First Amended Complaint (dkt. 62).
Later on June 24, 2022, Apttus also filed the instant motion to dismiss Gonzalez's Title VII claim
with prejudice, arguing once again that Gonzalez waited too long to file a charge of discrimination
with the EEOC by not doing so until 361 days after her termination.  Motion to Dismiss ("Mot.")
(dkt. 63) at 1.[4]

---

[4] In filing a motion to dismiss under Rule 12(b)(6) after filing an answer to the amended
complaint—even later the same day—Apttus violated Rule 12(b)'s requirement that a "motion
asserting any of these defenses must be made before pleading if a responsive pleading is allowed."
*See* Fed. R. Civ. P. 12(b).  Neither party addresses that issue.  The Court excuses the error, or in
the alternative, construes the present motion as seeking judgment on the pleadings under Rule
12(c), which implicates substantially the same standard as a motion to dismiss under Rule

United States District Court
Northern District of California

### III.     ANALYSIS

#### A.     Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).   Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  In ruling on a motion under Rule 12(c), the Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the non-moving party.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Even post-*Iqbal*, courts must still liberally construe

---

12(b)(6).  *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  Defense counsel is admonished to comply with applicable rules going forward.

United States District Court
Northern District of California

1  pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in

2  *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se,

3  particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the

4  benefit of any doubt." *Id.* at 342. Nevertheless, the court may not "supply essential elements of

5  the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266,

6  268 (9th Cir. 1982).

7        If the Court dismisses a complaint for failure to state a claim, it should "grant leave to

8  amend even if no request to amend the pleading was made, unless it determines that the pleading

9  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127

10  (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts

11  "should freely give leave when justice so requires." *Id.* Further, when it dismisses the complaint

12  of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of

13  the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend

14  effectively.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*,

15  963 F.2d 1258, 1261 (9th Cir. 1992)). "'Without the benefit of a statement of deficiencies, the pro

16  litigant will likely repeat previous errors.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624

17  (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

18      **B.**    **Timeliness of Gonzalez's Title VII Claim**

19        Apttus argues that Gonzalez's Title VII claim should be dismissed with prejudice because

20  she did not file a charge of discrimination with the EEOC within the 300-day window after her

21  termination, instead filing a charge 361 days after December 13, 2019. *See* Mot. (dkt. 63) at 5–6.

22  A plaintiff alleging employment discrimination in violation of Title VII must file a charge with the

23  EEOC within 300 days of the conduct at issue (or within 180 days in states that do not have their

24  own enforcement agencies). *See Holmes v. Tacoma Pub. Sch. Dist. No. 10*, 736 F. App'x 190,

25  191 (9th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117; *Nat'l Passenger R.R.*

26  *Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002)). That deadline is subject to some exceptions:

27             [A plaintiff's] failure to timely file her charge to the EEOC is not
           necessarily fatal. As the Supreme Court has held, the "time period for

28             filing a charge is subject to equitable doctrines such as tolling or

1

2

3

4

5

6

estoppel." *Morgan*, 536 U.S. at 113. "Equitable tolling is, however, to be applied only sparingly." *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997). For example, the Supreme Court has permitted equitable tolling when "the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate." *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992) (collecting cases). But "[c]ourts have been generally unforgiving . . . when a late filing is due to claimant's failure 'to exercise due diligence in preserving [her] legal rights.'" *Id.* (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

7   *Holmes*, 736 F. App'x at 191.  Although the charge-filing requirement is not a limitation on the

8   jurisdiction of the federal courts, it remains "'mandatory' in the sense that a court must enforce the

9   rule if a party properly raises it."  *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849, 1852 (2019)

10   (cleaned up).

11          Here, as Apttus correctly notes, Gonzalez's EEOC charge is dated 361 days after she

12   alleges she was fired, assuming that her reference to 2009 was intended as 2019.  Gonzalez asserts

13   in her opposition to the instant motion that she first attempted to file a charge with the EEOC in

14   New York, but she was directed to file in California, "where the online inquiry for filing was

15   initiated on November 23, 2020, and officially filed via electronic signature on December 8,

16   2020."  Opp'n (dkt. 65) at 2.  She also asserted in her opposition to Apttus's previous motion for

17   judgment on the pleadings that she experienced health issues in 2020 that impaired her ability to

18   pursue her claims, but Gonzalez does not assert this in her opposition to the instant motion.

19   Opposition to Motion for Judgment on the Pleadings (dkt. 53) at 9.

20          As this Court noted in its previous order granting Apttus's motion for judgment on the

21   pleadings, "if Gonzalez intends to rely on assertions to support any argument for tolling the EEOC

22   filing deadline, she must include them as allegations in her complaint," because "[p]resenting new

23   factual assertions in an opposition brief is not a substitute for allegations missing from a

24   complaint."  Order at 5–6; *see Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir. 1988) (affirming

25   dismissal, although reversing denial of leave to amend, where a "plaintiff [had] attempt[ed] to

26   expand the scope of his complaint by making allegations in a collateral document not subject to

27   counter by means of an answer or motion to dismiss").

28          Gonzalez still has not included any allegations in her first amended complaint that could

7

support tolling the EEOC filing deadline, despite the Court's clear instructions.  There is no reason to think she would use a second opportunity to amend more effectively.  Even if the Court were to consider the assertions she has made in her briefs (but not alleged in her complaints), Gonzalez has not stated *when* she contacted the EEOC in New York or whether it was within the 300-day deadline, has not cited authority to suggest that mistaken outreach to the wrong EEOC office tolls the deadline, and has not provided details of her medical condition or the specific periods of time, if any, when she was incapable of filing an administrative charge.  Accordingly, the Court concludes that her Title VII claim must once again be dismissed as untimely presented to the EEOC, and that further leave to amend would be futile.

## IV.    CONCLUSION

For the reasons discussed above, Apttus's motion to dismiss is GRANTED, and Gonzalez's Title VII claim is DISMISSED with prejudice.  Gonzalez may proceed on her Equal Pay Act claim.

Gonzalez also raises discovery issues in her opposition, including whether Apttus complied with its initial disclosure obligations or produced documents requested by Gonzalez. *See* Opp'n at 6.  An opposition to a motion to dismiss is not the appropriate mechanism to raise these issues, and the parties do not appear to have adequately met and conferred to determine whether they can resolve them.  The Court ORDERS the parties to comply with the standing order to meet and confer on any discovery issues, and then the parties may file a joint letter if any issues are unresolved.[5]

---

[5] The relevant portion of the standing order states:

> In lieu of filing formal discovery motions, lead trial counsel for the parties involved in the discovery dispute shall meet and confer by video conference regarding the subject matter of the dispute(s) in an effort to resolve these matters. After attempting other means to confer on the issue (i.e. letter, phone call, e-mail) any party may demand such a meeting on five business days' notice. Within five business days of the lead trial counsels' meet-and-confer session, the parties shall provide a detailed Joint Letter to the Court, not to exceed five pages without leave of Court. This Joint Letter shall include a description of every issue in dispute and, with respect to each such issue, a detailed summary of each party's final substantive position and their final proposed compromise on each issue. Upon receipt of the Joint Letter

United States District Court
Northern District of California

Gonzalez is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance as she continues to pursue this case.  Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation.  Gonzalez may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: August 1, 2022

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

---

the Court will determine what future proceedings are necessary. The meet and confer and joint letter procedures in this Order apply to disputes among the parties to this action and to disputes between parties and non-parties who have been served with subpoenas.

Civil Standing Orders for Magistrate Judge Joseph C. Spero ¶ 9.

9