UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIRA GONZALEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>APTTUS CORPORATION,<br><br>　　　　Defendant. | Case No. 21-cv-01844-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT AND REFERRING PLAINTIFF TO LEGAL HELP CENTER FOR DETERMINATION OF ELIGIBILITY FOR APPOINTMENT OF COUNSEL**<br><br>Re: Dkt. No. 100 |

## I.　INTRODUCTION

On January 31, 2023, California's Civil Rights Department ("CRD") issued a right-to-sue letter permitting Plaintiff, Yanira Gonzalez, pro se, to bring a civil action asserting employment discrimination claims under the Fair Employment and Housing Act ("FEHA") against her former employer, Apttus Corporation ("Apttus"). Accordingly, the Court granted Gonzalez leave to amend her complaint to add the newly exhausted FEHA claims. Gonzalez's amended complaint, however, did not include any FEHA claims. *See* dkt. no. 87. The Court found that "Gonzalez's failure to assert the newly exhausted FEHA claims in her Second Amended Complaint was not a result of any bad faith but instead, reflected a genuine lack of understanding of the Court's instructions and the legal requirements and implications of the administrative exhaustion of her FEHA claims." Dkt. no. 98 at 9-10. Therefore, it gave Gonzalez leave to file a Third Amended Complaint to assert the following FEHA claims against Apttus: 1) gender discrimination in violation of Cal. Gov't Code section 12940(a); 2) age discrimination in violation of Cal. Gov't. Code section 12940(a); 3) disability discrimination in violation of Cal. Gov't. Code section 12940(a); 4) retaliation in violation of Cal. Gov't Code section 12940(h). *Id.* at 10. In addition,

1  the Court allowed Gonzalez to assert her federal Equal Pay Act claim in her Third Amended
2  Complaint. *Id.*
3        Gonzalez filed her Third Amended Complaint (dkt. no. 99) ("TAC") on June 22, 2023. In
4  it, she asserts the four FEHA claims listed above, as well as a claim under the "Equal Pay Act"
5  that does not specify that the claim is brought under federal law or cite a statutory provision.
6  Apttus filed a Motion to Dismiss Pursuant to FRCP 12(b)(6). Dkt. no. 100 ("Motion"). That
7  Motion is presently before the Court. In the Motion, Apttus argues that all of the FEHA claims
8  should be dismissed with prejudice because Gonzalez does not include in her TAC "any allegation
9  that she ever worked in California or even set foot in California or that any adverse employment
10 action took place in California." Motion at 1. Apttus further asserts that Gonzalez's Equal Pay
11 Act claim is asserted under California law and thus both exceeds the scope of the Court's order
12 granting leave to amend (and therefore should be dismissed) and results in waiver of her *federal*
13 Equal Pay Act claim. *Id.*
14       The Court finds that the Motion is suitable for determination without oral argument and
15 therefore vacates the **Motion hearing set for August 18, 2023 at 9:30 a.m.** pursuant to Civil
16 Local Rule 7-1(b). **The Case Management Conference set for the same date will remain on**
17 **calendar but will be conducted at 2:00 p.m. instead of 9:30 a.m.** For the reasons stated below,
18 the Motion is GRANTED in part and DENIED in part.[1]

19 **II.   THIRD AMENDED COMPLAINT**
20       In the TAC, Gonzalez alleges that "at all times relevant here, she has resided in New York,
21 USA." TAC ¶ 1. She alleges that "Apttus Corporation, aka Conga, Thoma Bravo"[2] was her
22 employer. *Id.* ¶ 2. In the "Jurisdiction and Venue" section of the TAC, Gonzalez alleges that
23 "[t]his Court has jurisdiction over plaintiff's claims pursuant to FEHA and Equal Pay Act and
24 2016 amendment to the California Equal Pay Act (EPA)." She further alleges that "[a] substantial

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] At the May 19, 2023 motion hearing, counsel for Apttus Corporation stipulated that Apttus, Conga and Thoma Bravo are the same entity and that it is properly referred to as Apttus for the purposes of this case.

2

1  part of the events [she is] suing about happened in this district of San Mateo, California" and that
2  Apttus has its worldwide headquarters at 1400 Fashion Island Blvd #100, San Mateo, CA
3  94404[.]" *Id.* ¶¶ 5, 8.

4      In the "Factual Allegations" section of the TAC, Gonzalez describes her employment with
5  Apttus as an Engagement Manager, from the time she was hired, in May or June of 2017, to the
6  time she was terminated, in December 2019. *Id.*, Factual Allegations, ¶¶ 1-31. According to
7  Gonzalez, she "learned about the difference in pay between her male counterparts hired in New
8  York City the same day she was in New York City conducting the onsite final interview on May
9  12, 2017." *Id.* ¶ 3. Gonzalez further alleges that "[f]rom June of 2017 to the end of 2019, Apttus
10 Corporation paid all other male Engagement Managers more in salary, incentives, bonus, and
11 shares than it paid Gonzalez." *Id.* ¶ 5. The Factual Allegations section of the TAC does not
12 include any specific allegations about where Gonzalez performed her work for Apttus, but one
13 allegation refers to "the crying of Gonzales's toddler in the background[,]" suggesting that she
14 performed some work remotely. *Id.* ¶ 9.

15     In the TAC, Gonzalez includes the following allegations related to her FEHA complaint
16 with the DFEH:

> While responding to the Civil Rights Department complaint filed by Gonzalez, Apttus stated that Gonzalez did not work in California. This false statement prompted the closure of the case and no further investigation by CRD was done for Gonzalez's case. A right to sue letter was issued instead. The reason for closure was No Jurisdiction- CP Not Covered.

20 *Id.* ¶ 67. The right-to-sue letter issued by the CRD is not attached to the TAC. Nor did the parties
21 supply a copy of the letter with their motion papers on the instant motion.

22 **III.   ANALYSIS**

23     **A.   Legal Standards**

24     A complaint may be dismissed for failure to state a claim on which relief can be granted
25 under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss
26 under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*
27 *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage
28 is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

1 sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing
2 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

3       In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Equal Pay Act Claim

Apttus contends it "can only interpret Plaintiff's First Cause of Action to be a claim under California's Equal Pay Act" because the TAC does not reference a specific federal statute and does not explicitly state that the claim is a *federal* Equal Pay Act Claim. Motion at 7. Apttus also points to the allegation in the Jurisdiction and Venue section of the TAC that "the Court has jurisdiction over plaintiff's claims pursuant to FEHA and Equal Pay Act and 2016 amendment to the California Equal Pay Act (EPA)" in support of its conclusion that the Equal Pay Act claim is asserted under California law. *Id.* Even if the claim itself is asserted under federal law, Apttus contends, the reference to the California Equal Pay Act in the TAC indicates Gonzalez is seeking

4

1  to assert an Equal Pay Act claim under California law, which exceeds the scope of the Court's
2  permission to amend.  *Id.* Apttus says that this transgression warrants dismissal of the TAC in its
3  entirety.  Apttus's arguments have no merit.
4      First, it is disingenuous of Apttus to assert that it can "only interpret" Gonzalez's claim as
5  being brought under California law when the history of this case makes the opposite conclusion
6  more plausible.  Gonzalez asserted her federal Equal Pay Act claim for the first time in her
7  original form complaint, listing "Equal Pay" without citation to statutory authority.  Dkt. no. 1.
8  Likewise, in her First Amended Complaints, Gonzalez asserted a claim under the "Equal Pay Act"
9  that did not expressly state that the claim was asserted under federal law or cite to the statute.  Dkt.
10 no. 61 (FAC) ¶¶ 29-31.  Apttus understood, however, that the claim was asserted under federal
11 law, as did the Court.  *See* dkt. no. 88 (Motion to Strike or Dismiss) at 7 ("On June 11, 2022,
12 Plaintiff filed her First Amended Complaint . . . In her FAC, Plaintiff abandoned her
13 discrimination claims under the ADA and ADEA, and instead alleged only that she was paid less
14 than her male colleagues in violation of the federal Equal Pay Act . . . and Title VII."); dkt. no. 98
15 (Order Granting Motion to Strike or Dismiss Pursuant To FRCP 12(f) AND 12(b)(6)) at 2 ("On
16 June 10, 2022, Gonzalez filed her First Amended Complaint ('FAC'), in which she asserted only
17 two claims: a claim for sex discrimination under Title VII and a claim under the federal Equal Pay
18 Act").  Further, the Court instructed Gonzalez that she could proceed with that claim.  Dkt. no.69
19 at 8.
20     In the Second Amended Complaint, Gonzalez's Equal Pay Act claim was almost identical
21 to the one in the FAC and again did not expressly state that the claim was asserted under federal
22 law.  Dkt. no. 87 ¶¶ 32-35.  Apttus did not challenge that claim in its motion to dismiss the SAC;
23 and though it argued that all of the other federal claims asserted in the SAC should be dismissed, it
24 did not argue that dismissal of those claims would deprive the Court of federal question
25 jurisdiction. Rather, Apttus apparently understood that Gonzalez's Equal Pay Act claim was (still)
26 a federal claim. The Court, too, understood that the claim was asserted under federal law and again
27 told Gonzalez she could proceed with that claim, giving her leave to include it in the TAC.
28     In the TAC, Gonzalez's Equal Pay Act claim contains allegations that are almost identical

5

1  to the ones in the First and Second Amended Complaints, which the Court and the parties have
2  consistently interpreted as asserting a federal Equal Pay Act claim.  Thus, in the context of this
3  case, it is entirely reasonable to conclude that in the TAC, like the previous amended complaints,
4  Gonzalez intended to assert a claim under the federal Equal Pay Act.  This conclusion is
5  strengthened rather than weakened by the reference to "the Equal Pay Act and 2016 amendment to
6  the California Equal Pay Act" in the TAC, as it indicates that when Gonzalez *wants* to refer to the
7  California Equal Pay Act instead of the federal Equal Pay Act, she explicitly references California
8  law.[3]

Therefore, the Court rejects Apttus's challenge to Gonzalez's Equal Pay Act claim.

### C. FEHA Claims

Apttus argues that Gonzalez's FEHA claims should be dismissed with prejudice because she did not allege "that she ever worked in California or even set foot in California or that any adverse employment action took place in California."  Motion at 1.  Apttus points out that Gonzalez alleges that "[a]t all times relevant here, she has resided in New York, USA" and that she "learned about the difference in pay between her male counterparts hired in New York City the same day she was in New York City conducting the onsite final interview on May 12, 2017." *Id.* (quoting TAC ¶¶ 1, 3).  According to Apttus, FEHA does not apply to extraterritorial conduct and therefore, Gonzalez's FEHA claims must be dismissed. *Id.* at 3-6 (citing *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 (9th Cir. 2017); *Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 U.S. Dist. LEXIS 11728, at *8 (N.D. Cal. Feb. 5, 2007); *Gowan v. Stryker Corp.*, No. 20-cv-00339-BLF, 2021 U.S. Dist. LEXIS 146127, at *24 (N.D. Cal. Aug. 4, 2021)).

"State statutes are presumed not to have extraterritorial effect." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014). "In determining FEHA's extraterritorial reach, the

---

[3]Because the Court finds that Gonzalez's Equal Pay Act claim should be construed as a federal Equal Pay Act Claim, it does not reach Apttus's waiver argument.  As to its suggestion that the *entire complaint* should be dismissed with prejudice as a sanction for a reference to the California Equal Pay Act in the "Jurisdiction and Venue" section of the complaint, Apttus has pointed to no authority to support the imposition of such a drastic sanction.  In any event, the Court does not construe the TAC as asserting such a claim given that it does not include a separate cause of action under the California Equal Pay Act.

6

1    California Court of Appeal[ ] held that 'FEHA was not intended to apply to non-residents where ...

2    the tortious conduct took place out of this state's territorial boundaries.'" *Paparella v. Plume*

3    *Design, Inc.,* No. 22-CV-01295-WHO, 2022 WL 2915706, at *3 (N.D. Cal. July 25, 2022)

4    (quoting *Campbell v. Arco Marine, Inc*., 42 Cal. App. 4th 1850, 1852, 1858–60 (1996)).

5    Therefore, a plaintiff who resides outside of California and seeks to assert a FEHA claim must

6    "plead at a minimum that [they were] either employed in California or that the discriminatory

7    conduct occurred in California." *Gonsalves v. Infosys Techs., LTD*., No. C 09-04112 MHP, 2010

8    WL 1854146, at *5 (N.D. Cal. May 6, 2010);  *see also Dodd-Owens v. Kyphon, Inc*., No. C 06-

9    3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (holding that "blanket

10   allegation" that defendant employer "disseminated policies from within California" was not

11   sufficient to state a FEHA claim as to plaintiff who did not reside or work there and that if it is

12   alleged that California-based corporate officers participated in or ratified the discriminatory

13   conduct 'the complaint must so state with specificity so that the Court can determine if these

14   actions are sufficient to state a claim under FEHA.").

15       Here, the allegations in the TAC are somewhat vague as to where the relevant conduct

16   occurred.  Gonzalez does allege that "[a] substantial part of the events [she is] suing about

17   happened in this district of San Mateo, California." TAC ¶ 5.  She also alleges that Apttus has its

18   worldwide headquarters in San Mateo, California.  *Id.*  ¶ 8. She does not, however, allege any

19   specific facts about where the conduct that is the basis of her FEHA claims occurred.   Given that

20   Gonzalez alleges that she was a resident of New York at all relevant times, she must include in her

21   complaint specific factual allegations showing that there is a sufficient nexus with California to

22   state a FEHA claim.  As she has not done so, her FEHA claims must be dismissed for failure to

23   state a claim.

24       **D.     Whether Plaintiff Should be Given Leave to Amend**

25       Apttus argues that the Court should deny leave to amend as to all of Gonzalez's claims,

26   asserting that it will be "unfairly prejudiced" by having to respond to yet another complaint if

27   Gonzalez is given leave to amend.  Motion at 8.  The Court concludes that denying leave to amend

28   would not be appropriate under the standards that apply to Rule 15 of the Federal Rules of Civil

1  Procedure, governing amendment of pleadings.

2  Under Rule 15, a party may amend their complaint once "as a matter of course[.]" Fed. R.
3  Civ. P. 15(a)(1). After that, the opposing party's written consent or leave of court is required to
4  amend a complaint. Fed. R.Civ. P. 15(a)(2). "The court should freely give leave when justice so
5  requires." *Id.* The Ninth Circuit has explained that "[t]his policy is 'to be applied with extreme
6  liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Factors
7  courts consider in making this determination were set forth by the Supreme Court in *Foman v.*
8  *Davis*, in which the Court offered the following guidance:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962). Prejudice is the factor that is given the greatest weight; "absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d at 1052 (emphasis in original). Further, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Id.*

The Court finds no undue delay, bad faith or dilatory motive on Gonzalez's part. Rather, her failure to adequately allege the place of the relevant conduct in support of her FEHA claims is at least in part due to the fact that she is not an attorney and, understandably, she is not familiar with the law governing the extraterritorial application of FEHA. Nor has Gonzalez failed to "cure deficiencies by amendments previously allowed" as the Court has not previously granted leave to amend in order to cure this defect.

There are also facts alleged in previous versions of Gonzalez's complaint and in her opposition brief that suggest she may be able to state valid FEHA claims if she is given an opportunity to amend. *See, e.g.,* Second Amended Complaint ¶ 4 ("In 2017, Gonzalez learned about the difference in salary between a male and female counterpart while attending the new hire

onboarding training in San Mateo, California. Gonzalez voiced her concern to the VP of HR during a dinner at the CEO's house party and casually shared the same to the CEO and his partner during same dinner. An email follow up was sent to VP of HR Don Robertson."); Opposition at 4 (asserting that Apttus conducted new hire training, hosted clients and held team meetings at its headquarters in San Mateo and that Gonzalez participated in "key working sessions in San Mateo").

As to the prejudice to Apttus of permitting Gonzalez to amend her complaint, the Court concludes that it is not so great as to warrant dismissing claims that Gonzalez may be able to cure – especially given that the Equal Pay Act claim is going to go forward in any event.  That said, the Court understands that Gonzalez's lack of legal representation has resulted in delay in moving this case forward and may have increased the cost of defending the case incurred by Apttus.   It has also posed challenges for Gonzalez and the Court.  For these reasons, the Court has decided to appoint counsel to represent Gonzalez for the remainder of the case, including the drafting of the fourth amended complaint, any settlement discussions and for trial, if counsel is available and so long as she qualifies for such an appointment under General Order 25. **Gonzalez is therefore instructed to contact the Legal Help Center by calling (415) 782-8982 or emailing fedpro@sfbar.org to arrange an appointment. The Legal Help Center will assess Gonzalez, pursuant to General Order 25, to determine whether she is eligible for appointment of pro bono counsel to represent her.**

IV. **CONCLUSION**

The Motion is DENIED as to Claim One (the federal Equal Pay Act claim) and GRANTED as to the FEHA claims (Claims Two through Five).  Claims Two through Five are dismissed with leave to amend.   Gonzalez is permitted to amend her complaint only to assert specific facts to establish that the conduct that is the basis of her FEHA claims occurred in California.  She may not assert any new claims.  She may include her federal Equal Pay Act claim in her Fourth Amended Complaint. The Court will set a deadline for filing the Fourth Amended

9

Complaint after counsel has been appointed to represent Gonzalez in this case.

**IT IS SO ORDERED.**

Dated: July 26, 2023

_____
JOSEPH C. SPERO
United States Magistrate Judge